UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IZBELL ARRIOLA,

    Plaintiff,

v.

MONROE COUNTY,

    Defendant.

_____/

CASE NO.: _____

**PLAINTIFF DEMANDS A TRIAL BY JURY**

## COMPLAINT

Plaintiff, IZBELL ARRIOLA (hereinafter referred to as "Plaintiff" and/or "Ms. Arriola"), through her counsel, Derek Smith Law Group, PLLC, hereby complains of Defendant, MONROE COUNTY (hereinafter referred to as "Defendant" and/or "the County"), and alleges as follows:

## NATURE OF CASE

1. Plaintiff complains pursuant to the Americans with Disabilities Act ("**ADA**") and the Florida Civil Rights Act of 1992, Section 760.10 *et seq.* ("**FCRA**"); and seeks damages to redress the injuries Plaintiff suffered as a result of being exposed to disability-based discrimination

2. Plaintiff seeks monetary relief to redress the Defendant's unlawful employment practices against Plaintiff, including Defendant's unlawful discrimination against Plaintiff because of her disability, Defendant's failure to reasonably accommodate Plaintiff, and for Defendant's retaliatory actions against Plaintiff for beginning the interactive process of requesting a reasonable accommodation, all leading to her unlawful termination.

1

3. Defendant's unrelenting discrimination against Plaintiff culminated with her unlawful termination.

4. At bottom, Defendant is liable for subjecting Ms. ARRIOLA to a work environment infested with relentless discrimination and harassment and for wrongfully terminating Plaintiff because of her disability and in retaliation for requesting reasonable accommodation.

## JURISDICTION AND VENUE

5. This is an action for monetary damages and all other appropriate relief as deemed by the court, pursuant to Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*. ("ADA") and the Florida Civil Rights Act of 1992, Section 760.10 *et seq.* ("FCRA").

6. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under the ADA.

7. This Court has jurisdiction of the state and local claims herein pursuant to 29 U.S.C. § 1367, as this action involves state law causes of action arising from the same case or controversy as the federal claims herein.

8. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) based upon the fact Defendant is and was located in this judicial district, and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district. Plaintiff was employed by Defendant within Monroe County, Florida. Additionally, the events took place in Monroe County, Florida.

## PROCEDURAL REQUIREMENTS

9. Plaintiff has complied with all statutory prerequisites to file this action.

10. On or around October 15, 2020, Plaintiff dual filed her charge with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR"), Charge number 510-2021-00069.

11. An EEOC filing automatically operates as a dual Florida Commission on Human Relations ("FCHR") filing.

12. On or about May 5, 2021, the EEOC issued a right to sue letter, and this action is being commenced.

## PARTIES

13. At all material times, Plaintiff is an individual, disabled (anxiety, post-traumatic stress disorder, obsessive compulsive disorder, claustrophobia) woman who is a resident of the State of Florida and resides in Monroe County, Florida.

14. Defendant is a political subdivision of the State of Florida, created and duly authorized to exist under the laws of the State of Florida.

15. Defendant is an employer as defined by all laws under which this action is brought and employs the requisite number of employees.

16. Defendant's exact number of employees is unknown, but upon information and belief, there are well more than the statutory minimum.

17. At all times material, Emily Schemper (hereinafter referred to as "SCHEMPER") was and is employed by Defendant as "Planning Director."

18. At all times material, SCHEMPER held supervisory authority over Plaintiff, controlling various tangible aspects of her employment, including but not limited to the power to hire and fire Plaintiff.

19. At all times material, Christine Hurley (hereinafter referred to as "HURLEY") was and is employed by Defendant as "Assistant County Administrator."

20. At all times material, HURLEY held supervisory authority over Plaintiff, controlling various tangible aspects of her employment, including but not limited to the power to hire and fire Plaintiff.

## FACTUAL ALLEGATIONS

21. On or about October 23, 2017, Defendant hired Plaintiff Arriola as Temporary Customer Service Representative 1.

22. On or about December 1, 2017, Ms. Arriola began working in a new position, "GIS Tech/Analyst Intern."

23. In or around January 2018, Plaintiff was transitioned to "GIS Tech/Analyst" by SCHEMPER and began working from Defendant's Marathon Office.

24. On or about October 2019, Defendant, by and through its supervisors/management, assigned an overwhelming workload to and applied unrelenting pressures on Plaintiff; as a result, Ms. Arriola sought out and began therapy and psychiatry treatment.

25. Shortly thereafter, Plaintiff was diagnosed with Anxiety Disorder, Posttraumatic Stress Disorder ("PTSD"), and Obsessive-Compulsive Disorder ("OCD").

26. Anxiety Disorder is a mental health disorder whose symptoms include, but are not limited to feelings of restlessness, being easily fatigued, shortness of breath or difficulty breathing,

uncontrollable feelings of worry, difficulty sleeping, panic attacks, shortness of breath, sweating, trembling/shaking, and/or feelings of impending doom.

27. Posttraumatic Stress Disorder is a psychiatric disorder that may occur in people who have experienced or witnesses a traumatic event. When "triggered," symptoms may include, but are not limited to vivid flashbacks, shortness of breath, intrusive thoughts or images, nightmares, extreme alertness, and/or severe anxiety.

28. Obsessive-Compulsive Disorder is a mental health disorder wherein a person experiences a cycle of uncontrollable, reoccurring thoughts and/or behaviors dictated by uncontrollable urges or compulsions.

29. As a result of her diagnosed mental disorders, Ms. Arriola is substantially limited in numerous essential life functions including, but not limited to, her ability to sleep, think, breathe, and communicate.

30. In or around February 2020, Plaintiff requested and was approved to work from home to aid her partner with his medical care.

31. In or around March 2020, Defendant mandated that all employees work from home due to COVID-19.

32. From February through May 2020, Plaintiff Arriola continued to work from home. At no time was Ms. Arriola made aware of any concerns with her productivity and/or work product. In fact, Ms. Arriola made herself readily available to complete not only her own tasks but additionally the tasks of those with whom she worked.

33. On or about May 29, 2020, because of COVID-19 restrictions being eased state-wide, Defendant ordered all employees to return to work in person. Additionally, Defendant

implemented a mandatory mask mandate for all its employees, except for when employees were in their private offices.

34. While this mandate may have been reasonable for most employees, Defendant's orders triggered and exacerbated Plaintiff's mental disorders. Specifically, the mask mandate aggravated Ms. Arriola's feelings of impending doom, anxiety, and claustrophobia.

35. The Defendant's orders and mask mandate caused Plaintiff to experience increased overwhelming panic attacks.

36. On or about June 1, 2020, Plaintiff consulted with her psychiatrist on Defendant's order requiring all employees to return to work in person in addition to its mask mandate. Concerned for her health, Ms. Arriola's psychiatrist wrote a letter to Defendant seeking a reasonable accommodation, recommending that Ms. Arriola "work from home at least until August 3, 2020."

37. To notify her employer as quickly as possible, Plaintiff immediately forwarded her psychiatrist's letter to SCHEMPER to begin the process of requesting an accommodation to work from home, this time for her own medical needs rather than her partner's.

38. Despite Plaintiff's actions to engage in the interactive process, Plaintiff was not provided any response from Defendant. After ten (10) days without a response, Ms. Arriola again requested accommodation pursuant to the Americans with Disabilities Act of 1990.

39. Soon thereafter, SCHEMPER followed up with Plaintiff, bringing to her attention the need for a HIPAA release form, wherein Defendant was seeking unreasonable access to Ms. Arriola's medical records.

40. Notably, during this interaction, SCHEMPER told Ms. Arriola something to the effect of, that she was "**going to be cut**."

41. On or about July 13, 2020, Plaintiff Arriola responded to SCHEMPER's request, providing the overreaching HIPAA release. Ms. Arriola began to grow concerned that she may be retaliated against for submitting a request for reasonable accommodation.

42. On or about August 3, 2020, after receiving no response from Defendant, Plaintiff sent SCHEMPER a follow-up email, once again advising of her psychiatrist's request to further extend Ms. Arriola's ability to work remotely.

43. On or about September 4, 2020, SCHEMPER called Plaintiff to formally advise that she was being "laid off" and would likely receive formal notice on September 17, 2020.

44. In response, Plaintiff attempted to contact SCHEMPER and HURLEY for clarification of the decision-makers and their reasoning for the decision to lay off Plaintiff. HURLEY responded by merely copying and pasting sections of the employee handbook.

45. On or about September 16, 2020, while out of work for a personal day, Plaintiff observed Defendant's Safety and Security Administrator, Mark Gongre ("Gongre"). Ms. Arriola met Mr. Gongre outside at which point she was personally served a letter advising of her termination.

46. On or about September 16, 2020, Defendant, by and through its management, unlawfully and wrongfully terminated Plaintiff.

47. Importantly, and in retaliation against Plaintiff's requests for reasonable accommodation, from June 2020 until her termination on or about September 16, 2020, Plaintiff Arriola was not receiving work assignments and never received any update regarding the status of her request for a reasonable accommodation.

48. In or around May 2021, Defendant posted advertisements for various planner positions, as well as inspectors and other positions. At no time did Defendant attempt to reinstate Plaintiff's employment in an alternative position.

49. Defendant exhibited a pattern and practice of not only discrimination but also retaliation.

50. As a result of the acts and conduct complained of, Ms. Arriola has suffered and will continue to suffer loss of income, loss of salary, bonuses, benefits, and other compensation which such employment entails, and Ms. Arriola also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

51. As a result of the Defendant's unlawful employment practices, Plaintiff Arriola has further experienced severe emotional and physical distress.

52. Further, because of the Defendant's unlawful employment practices, Ms. Arriola was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

53. Accordingly, because of the Defendant's unlawful employment practices, Plaintiff sought medical treatment and was prescribed medication.

54. Defendant's unlawful employment practices have caused Plaintiff to feel extremely humiliated, degraded, victimized, embarrassed and emotionally distressed. Ms. Arriola suffers from high stress, anxiety, depression, in addition to physical ailments.

55. As Defendant's conduct has been malicious, willful, extreme, and outrageous, and with full knowledge of the law, Ms. Arriola respectfully seeks all available damages including but not limited to emotional distress, loss wages, back pay, front pay, statutory damages, attorney's fees, costs, and interest from the Defendant.

56. At all material times, Defendant wrongfully terminated Plaintiff because of her disability, subsequent requests for a reasonable accommodation, and in retaliation for her ongoing requests for said accommodation.

57. Further, upon information and belief, numerous employees who remain employed by Defendant have been permitted the ability to work remotely.

58. Plaintiff Arriola claims constructive and/or actual discharge.

59. The facts are just some of the examples of the discrimination Plaintiff Arriola suffered. Additionally, Ms. Arriola claims a continues practice of discrimination and continuing violations and makes all claims herein under the continuing violations doctrine.

60. Plaintiff has suffered damages because of Defendant's unlawful employment practices.

## CAUSES OF ACTION

### COUNT ONE
*Disability Discrimination*
*(Disparate Treatment)*
*in Violation of 42 U.S. Code § 12111*

61. Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

62. The ADA makes it unlawful for an employer to discriminate against an employee based on that person's disability. 42 U.S.C. §12112.

63. 42 U.S.C. §12112(a) provides that "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

64. Further, 42 U.S.C. §12112(b)(4) provides that "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with

whom the qualified individual is known to have a relationship or association" is a prohibited form of discrimination.

65. Defendant is prohibited under the ADA from discriminating against Plaintiff because of her disability with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

66. Defendant's adverse and disparate treatment of Plaintiff to which Plaintiff was subjected as described and set forth above, including her termination of employment, was because of Plaintiff's disability.

67. In subjecting Plaintiff to adverse employment action on the basis of her disability, Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

68. At all times relevant, Defendant, by and through its employees, intended to unlawfully discriminate against Plaintiff Arriola in the terms and conditions of her employment because of his disability, and Defendant did unlawfully discriminate against Plaintiff in the terms and privileges of her employment because of her disability in violation of the ADA.

69. Defendant violated the ADA by unlawfully discharging and discriminating against Plaintiff based her disability, of which the Defendant was fully aware of.

70. As a result of Defendant's intentional discriminatory conduct and wrongful termination of Plaintiff's employment in violation of the ADA, Plaintiff Arriola has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.

71. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic

damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

72. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the ADA. Accordingly, Plaintiff also requests punitive damages as authorized by the ADA.

73. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

74. Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

75. Plaintiff Arriola has been damaged by Defendant's illegal conduct.

## COUNT TWO
*Disability Discrimination*
*(Failure to Accommodate)*
*in Violation of 42 U.S. Code § 12111*

76. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs contained herein.

77. The ADA prohibits employers from denying an individual's reasonable accommodations for a disability.

78. 42 U.S.C. §12112(a) provides that "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

79. Further, 42 U.S.C. §12112(b)(5)(A) provides that " not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity

can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."

80. Defendant, by and through its employees, was put on notice of Plaintiff's disability and need for reasonable accommodation when it received Plaintiff's numerous requests via her psychiatrist and after receiving Plaintiff's medical history records.

81. From June 2020 until Plaintiff's termination on or about September 16, 2020, Defendant, by and through its employees, failed to respond to Plaintiff's multiple requests for a reasonable accommodation via her psychiatrists.

82. Defendant discriminated against Plaintiff because of her disability by denying her multiple accommodation requests. From June 2020 until Plaintiff's termination in September 2020, every request and initiation to begin the interactive process was met by the Defendant with radio-silence and deliberate indifference.

83. Defendant would suffer no undue hardship by granting Plaintiff's reasonable accommodation request to continue to work from home because, upon information and belief, similarly situated individuals were granted the accommodation Plaintiff lawfully and reasonably sought.

84. At all times relevant, Defendant, by and through its supervisors/management, intended to unlawfully discriminate against Plaintiff by failing to provide a reasonable accommodation or participate in the interactive process.

85. As a result of Defendant's intentional discriminatory conduct and unlawful termination of Plaintiff's employment, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish,

loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

86. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights.

87. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

88. Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

89. Plaintiff Arriola has been damaged by Defendant's illegal conduct.

## COUNT THREE
### *Retaliation in Violation of 42 U.S. Code § 12111*

90. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs herein.

91. The ADA (29 U.S.C. §12203(a)) provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

92. At all material times, the employer exhibiting discriminatory conduct against Plaintiff Arriola possessed the authority to affect the terms, conditions and privileges of Plaintiff's employment with the Defendant.

93. Plaintiff participated in a protected activity when she requested and repeatedly renewed her request for a reasonable accommodation despite receiving no response or update. *Ponce v. City of Naples*, No. 2:17-CV-137-FTM-99CM, 2017 WL 2692829 (M.D. Fla. June 22,

2017); *Vargas v. Fla. Crystals Corp.,* No. 16-81399-CIV, 2019 WL 8955114 (S.D. Fla. May 13, 2019); *Earl v. Mervyns, Inc.*, 207 F.3d 1361 (11th Cir. 2000).

94. Defendant, by and through its supervisors/management, failed to provide Plaintiff a reasonable accommodation or engage in the interactive process despite Plaintiff's attempts to engage on June 10, 2020, July 13, 2020, and August 4, 2020.

95. Defendant further retaliated against Plaintiff by refusing to assign work assignments to Plaintiff after her initial request for accommodation.

96. Defendant, by and through its supervisors/management, terminated Plaintiff's employment.

97. Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

98. Plaintiff Arriola has been damaged by Defendant's illegal conduct.

## COUNT FOUR
*Disability Discrimination*
*(Disparate Treatment)*
*in Violation of Florida Statute Section §760.10(1)(a)*

99. Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

100. Defendant is prohibited under the FCRA from discriminating against Plaintiff because of her disability with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

101. Florida Statute Section 760.10(1)(a) provides that "[i]t is an unlawful employment practice for an employer…to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status."

102. Defendant's adverse and disparate treatment of Plaintiff to which Plaintiff was subjected as described and set forth above, including her termination of employment, was because of Plaintiff's disability.

103. In subjecting Plaintiff to adverse employment action on the basis of her disability, Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

104. At all times relevant, Defendant, by and through its employees, intended to unlawfully discriminate against Plaintiff Arriola in the terms and conditions of her employment because of his disability, and Defendant did unlawfully discriminate against Plaintiff in the terms and privileges of her employment because of her disability in violation of the FCRA.

105. Defendant violated the FCRA by unlawfully discharging and discriminating against Plaintiff based her disability, of which the Defendant was fully aware of.

106. As a result of Defendant's intentional discriminatory conduct and wrongful termination of Plaintiff's employment in violation of the FCRA, Plaintiff Arriola has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.

107. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

108. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the FCRA.  Accordingly, Plaintiff also requests punitive damages as authorized by the FCRA.

109. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

110. Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

111. Plaintiff Arriola has been damaged by Defendant's illegal conduct.

## COUNT FIVE
*Retaliation in Violation of Florida Statute Section §760.10(7)*

112. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs herein.

113. The FCRA prohibits retaliation against an employee for opposing conduct which would violate the terms of the FCRA. § 760.10(7), Fla. Stat. (2020).

114. Florida Statute Section 760.10(7) provides that "[i]t is an unlawful employment practice for an employer to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section."

115. At all material times, the employer exhibiting discriminatory conduct against Plaintiff Arriola possessed the authority to affect the terms, conditions and privileges of Plaintiff's employment with the Defendant.

116. Plaintiff participated in a protected activity when she renewed her request for a reasonable accommodation despite receiving no response or update. \

117. Defendant, by and through its supervisors/management, failed to provide Plaintiff a reasonable accommodation or engage in the interactive process despite Plaintiff's attempts to engage on June 10, 2020, July 13, 2020, and August 4, 2020.

118. Defendant further retaliated against Plaintiff by refusing to assign work assignments to Plaintiff after her initial request for accommodation.

119. Defendant, by and through its supervisors/management, terminated Plaintiff's employment.

120. Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under state law.

121. Plaintiff Arriola has been damaged by Defendant's illegal conduct.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues triable before a jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Izbell Arriola, demands judgment against Defendant collectively, Monroe County, and pray for the following relief: (1) an award of compensatory damages in an amount consistent with FCRA and ADA; (2) an award of reasonable attorneys' fees and costs of this action in accordance with FCRA and ADA; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that Defendant's conduct as set forth herein is in violation of FCRA and ADA; and (5) all other relief the Court deems just and proper.

Dated: July 29, 2021

                  **DEREK SMITH LAW GROUP, PLLC**
                  701 Brickell Avenue, Suite 1310
                  Miami, Florida 33131

P.: (305) 946-1884

_____
Lauren Tobin, Esq.
Fla. Bar No. 1024850
lauren@dereksmithlaw.com

*Attorney for Plaintiff*

18